## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JON D. HARRINGTON, II, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:19-cv-03179-AGF |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## **MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Jon Harrington is not disabled and thus not entitled to supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

### BACKGROUND

The Court adopts the statement of facts set forth in Plaintiff's Statement of Material Facts (ECF No. 13-1) and Defendant's Response with Additional Facts (ECF No. 14-1).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff was born on November 27, 1965, and has held jobs as a drywall laborer, trash hauler, lumber salesman, motorcycle porter, and car auction driver.  Tr. 63.  Plaintiff filed an application for supplemental security income on May 8, 2017, alleging

disability due to leg pain and carpal tunnel syndrome, with an onset date of September 1, 2015 (later amended by counsel to May 12, 2017). His application was denied at the administrative level, and he thereafter requested a hearing before an Administrative Law Judge ("ALJ"). On January 16, 2019, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from James Israel, a vocational expert ("VE"). On April 25, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity ("RFC") to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act. The ALJ found that Plaintiff had the RFC to perform light work as defined by the Commissioner's regulations, except for the following limitations:

> [He] can never climb ropes, ladders, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. In addition, he is limited to no operation of foot controls with his left leg. He can frequently reach, handle, finger, and feel, but can perform no overhead reaching. He must have no concentrated exposure to extreme heat, extreme cold, and respiratory irritants such as dust, fumes, odors, gases, and poor ventilation.

Tr. 13.

The ALJ next found that Plaintiff could perform certain light unskilled jobs listed in the Dictionary of Occupational Titles ("DOT") (e.g., cashier) which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. On October 21, 2019, the Appeals Council denied Plaintiff's request for

review. Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

In his sole point of error, Plaintiff asserts that the ALJ's RFC determination was too vague, and, consequently, the VE's opinion did not fully account for Plaintiff's limitations.

**The ALJ's Decision (Tr. 10-19)**

The ALJ found that Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome (CTS), status post-release; right cubital tunnel syndrome, status post release; left lateral malleolus fracture, status post open reduction internal fixation (ORIF); bilateral frozen shoulder; patellofemoral syndrome; chronic obstructive pulmonary disease (COPD); and obesity. Tr. 12. However, she found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[1] Tr. 12. The ALJ reviewed and summarized the evidence as follows.

Medical Evidence

At the hearing before the ALJ in January 2019, Plaintiff testified that he had bilateral release surgeries for his CTS but still experienced some numbness in two right fingers and sensitivity in his left palm. Tr. 35-36. He has also had surgery on his right

---

[1] Under the applicable regulation in effect at the time of the ALJ's decision, obesity was not a listed impairment, but the agency considered whether it would combine with another impairment to meet a listing. SSR 02-1p. The ALJ found no evidence that the functional effects of Plaintiff's obesity, combined with other impairments, would meet a listing. Tr. 12-13.

elbow, a wrist injury, a broken left ankle, a strained right ankle, and injured shoulders. Tr. 36-40.  As a result of the foregoing, he has trouble holding and lifting things, putting weight on his left foot, walking and climbing steps, and raising his right arm above his shoulder.  *Id*.  His feet go numb when he sits, he can stand for 15-20 minutes, and he can only walk a couple of blocks.  Plaintiff submitted a function report, dated shortly after his CTS release surgeries, similarly indicating limited use of his hands, difficulty lifting, and difficulty squatting, bending, kneeling, and climbing stairs.  Tr. 186-193.  He said he could only walk 100 yards but did not specify limitations with respect to standing and sitting.

      The ALJ found that, although Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, Plaintiffs statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record, from which the ALJ noted the following.  Tr. 14-16.

      Plaintiff had a consultative examination with Dr. Yasuo Ishida on August 1, August 2017 (two weeks after his left hand surgery and one month after his right).  Tr. 321-327.  Dr. Ishida noted Plaintiff's self-reported conditions and limitations.  Plaintiff said he had pain in his left foot and difficulty walking since breaking his ankle in 2014. He could walk half a block, stand 10 minutes, sit for two hours, and climb five stairs.  He could write, hold things, and lift eight pounds with his right hand, but his left hand was still recovering from surgery.  Plaintiff had a limp but was able to walk without a cane. He could cross his legs, tie his shoelaces, squat awkwardly, and perform fine and

4

dexterous movements, albeit clumsily with the left hand. He had some tenderness in the left ankle.

Plaintiff had an orthopedic consultation with Dr. Allan Morris in November 2017. Tr. 380-381.  Plaintiff reported his left ankle injury and surgery, stating that he had pain and swelling ever since then but did not seek follow-up treatment because his hands bothered him more.  He said he could stand 45 minutes, walk 20 minutes, sit more than 3 hours, and lift 8-10 pounds.  He walked 50 feet with a limp but no cane.  Dr. Morris opined that Plaintiff did not have a disability that would prevent him from working.

Next, the ALJ discussed Plaintiff's medical records of his primary impairments. With respect to Plaintiff's left ankle injury, the evidence showed that Plaintiff underwent surgery in July 2014 and was released with no restrictions that November.  At the time, he was working for Harley Davidson, after which he drove cars for auction until he could no longer put enough pressure on his left foot to operate a manual transmission.  He did not seek treatment until May 2018, when x-rays showed complete healing of the fracture. Tr. 357-359.  The orthopedist, Dr. Cody Bellard, believed that Plaintiff's pain was attributable to the hardware in his ankle.  Dr. Bellard proposed leaving it, if Plaintiff could tolerate the pain, or removing it.  Plaintiff said he would think about it.  *Id*.  The ALJ concluded that Plaintiff's left ankle injury was not disabling, as Plaintiff returned to work after his surgery and did not seek further treatment for several years. Tr. 15.  The ALJ accounted for Plaintiff's functional capacity by limiting him to light work that would not require him to use his left leg for foot controls.  *Id*. The ALJ found no evidence in the record warranting greater limitations.

5

With respect to Plaintiff's hand functioning, the ALJ noted that Plaintiff had bilateral surgeries in June and July 2017 to correct cubital and carpal tunnel syndromes in the right hand and carpal tunnel syndrome only in the left hand.  Plaintiff went to physical therapy and by December was "100 times better" though not completely back to normal.  Tr. 349.  The ALJ noted that Plaintiff appeared to recover well and showed little difficulty since his surgeries such that he could frequently reach, handle, finger, and feel. *Id*.  The ALJ concluded that a limitation to light work would accommodate Plaintiff's condition and the record did not support greater restrictions.

Plaintiff saw a new medical provider in March 2018 and reported bilateral shoulder pain, numbness and tingling in his hands, decreased grip strength, and pain in his right ankle.  Tr. 329-332.  An examination showed bilateral shoulder capsule tenderness with impeded overhead reaching, but no back tenderness or upper extremity weakness.  He was referred to an orthopedist and, two weeks later, saw the doctor who performed his hand surgeries.  Scans showed no significant osteoarthritis.  Plaintiff was diagnosed with frozen shoulders and given injections and an exercise program.  Tr. 351-353.  Plaintiff returned in July 2018 and received injections in the shoulders and right knee. Tr. 366-367.  The ALJ accounted for these conditions by limiting Plaintiff to jobs not requiring overhead reaching.  Tr. 16.

The ALJ considered Plaintiff's obesity, hypertension, poor endurance, and respiratory limitations and took these conditions into account when determining Plaintiff's RFC.  Tr. 16.

6

The ALJ then considered the medical opinions in the record. State agency consultant Dr. Garland Tschudin reviewed Plaintiff's medical records, including Dr. Ishida's examination on August 1, 2017, and issued an opinion dated August 15, 2017. Dr. Tschudin opined that Plaintiff could perform a reduced range of light work with limitations for fine and gross manipulation with his hands. Tr. 58-62. The ALJ agreed with Dr. Tschudin's assessment for light work but found the opinion only partially persuasive with respect to Plaintiff's motor skills insofar as more recent records showed that Plaintiff had responded well to his hand surgeries and shoulder injections. Tr. 16. The ALJ therefore adjusted the RFC suggested by Dr. Tschudin based on the more recent records available at the time of the administrative hearing. *Id.*

Additionally, and as previously stated, Dr. Morris evaluated Plaintiff in November 2017 and opined that Plaintiff did not have a disability or impairment that would prevent him from working. Tr. 384. The ALJ found this opinion persuasive as it was supported by the medical evidence. Tr. 17.

Finally, the ALJ considered the third-party function report submitted by Plaintiff's father, with whom Plaintiff resides. Tr. 199-206. However, the ALJ deemed the medical evidence more accurate in reflecting Plaintiff's limitations, so the ALJ did not find this report persuasive. Tr. 17.

Based on the medical evidence as summarized above, the ALJ found that Plaintiff is limited to performing a reduced range of light work with the limitations stated in the RFC.

Vocational Expert Testimony

Next, the ALJ referred to the VE's testimony that a hypothetical person with Plaintiff's RFC and vocational factors (e.g., age, education, work experience) could perform certain unskilled jobs listed in the DOT and available in significant numbers in the national economy.  Specifically, the VE testified that a hypothetical individual with Plaintiff's limitations could perform work as a cashier (DOT 211.462-010, with 138,000 jobs nationwide), product inspector (DOT 529.687-186, with 104,000 jobs nationwide), or packer (DOT 920.685-026, with 125,000 jobs nationwide).  Tr. 49-50.

Acknowledging that the DOT does not address unilateral extremity limitations or overhead reaching limitations as specified in Plaintiff's RFC, the VE stated that his testimony in those respects was based on his 30-plus years of experience in the field. Plaintiff's counsel had no further questions for the VE at that point, and the hearing was adjourned.

Based on the VE's testimony, the ALJ concluded that Plaintiff had the RFC to perform a reduced range of light work, with the physical limitations previously described, and that Plaintiff could perform work existing in significant numbers in the national economy, specifically that of cashier.  Tr. 18.  The ALJ acknowledged that, while the DOT does not address specific directional reaching limitations, the VE was able to account for Plaintiff's overhead reaching limitation by virtue of the VE's own experience and education.  *Id.*  Accordingly, the ALJ concluded that Plaintiff is capable of adjusting to other work and is not disabled under the Act.

8

In his brief before this Court, Plaintiff asserts that the ALJ's RFC description was too vague to elicit an accurate opinion from the VE as to Plaintiff's occupational abilities. Plaintiff asks that the ALJ's decision be reversed and remanded for further testimony by the VE based on a hypothetical more specifically tailored to Plaintiff's functional limitations.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If the claimant

9

cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the step-five burden. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply

10

because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

In his sole point of error, Plaintiff asserts that the ALJ's RFC description was too vague to elicit an accurate opinion by the VE as to Plaintiff's ability to work. More specifically, Plaintiff argues that the RFC lacked a function-by-function assessment (i.e., with particulars as to sitting, standing, walking, lifting, carrying, pushing, pulling) such that the VE might not have incorporated any limitations in those areas into his vocational assessment.

The parties agree that the regulations require the ALJ to assess functional limitations before expressing the RFC in terms of exertional level. SSR 96-8p. The Commissioner argues, however that such limitations are inherent in "light work" as defined in the agency's regulations, which the ALJ cited in the RFC.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967.

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

11

>workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

SSR 83-10.

Given these definitions, the Commissioner submits that the ALJ made implicit functional assessments in finding that Plaintiff was capable of light work "as defined in 20 CFR §416.967(b)" and then further limited Plaintiff's RFC as warranted by the record. Applicable precedent permits this approach.  The Eighth Circuit has squarely considered and rejected Plaintiff's argument that an ALJ must make express findings on every function in order to comply with SSR 96-8p. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1091 (8th Cir. 2018) (stating that an ALJ need not mechanically list every possible limitation); *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (concluding that the ALJ made implicit findings on functions not mentioned in the RFC); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (inferring that the ALJ found no limitations in the functions not specifically mentioned).  Plaintiff supplies no contrary authority.

Further, the record supports the ALJ's implicit findings with respect to specific functions not mentioned in the RFC.  Dr. Tschudin, the state agency consultative examiner, opined in August 2017 that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand about 6 hours in an 8-hour workday, and sit about 6 hours in and 8-hour workday.  Tr. 60-61.  Dr. Morris, the orthopedic specialist, opined in November 2017 that Plaintiff had no disability which would prevent him from working. Tr. 384.  As the ALJ noted in her decision, Plaintiff returned to work after his left ankle

12

surgery in 2014 and did not seek further examination until 2018 when he injured his right ankle and shoulders after falling down some stairs. X-rays showed complete healing of the left ankle, and Plaintiff walked without a cane. Plaintiff was offered the choice to live with some pain or have the hardware removed, and the record does not reflect further treatment that year. Injections to the shoulders and right knee and ankle provided relief. The ALJ limited the RFC to account for Plaintiff's difficulties with his left foot and shoulders but found no support for greater limitations.

Plaintiff adduced no medical source opinions to contradict the opinions of Drs. Tchudin and Morris or otherwise establishing that Plaintiff's limitations are more severe. The ALJ considered Plaintiff's self-reported limitations as expressed in his function report and testimony but concluded that, in the context of the whole record, the evidence did not support them. Tr. 14. This is a proper exercise of the ALJ's discretion. "Credibility determinations are the province of the ALJ." *Id*. at 1090.[2]

Plaintiff concedes in his brief that the record was sufficient to enable the ALJ to make findings as to his RFC (ECF No. 13 at p. 9). He does not appear to challenge the ALJ's assignment of weight to the evidence but only her articulation of the RFC as relevant to the VE's testimony. On that issue, Plaintiff's argument that the VE might not have understood the implicit limitations of the hypothetical RFC is also unpersuasive. The Court is confident that a VE with 30-plus years of experience in the field would be

---

[2] Although SSR 16-3p, published March 28, 2016, eliminates the use of the term "credibility," expressly rescinding SSR 96-7p, Eighth Circuit precedent continues to employ the term to describe an assessment of whether the evidence supports a claimant's subjective symptoms.

familiar with the exertional parameters of "light work" as defined in the regulations. Indeed, the VE demonstrated his ability to distinguish between different exertional levels when responding to an alternate hypothetical assuming sedentary parameters. Tr. 50. The Court is not convinced that the ALJ's omission of certain functions for which she found no limitations impeded the VE's assessment or diminished the value of his testimony.

Finally, Plaintiff argues that the ALJ erred by failing to explain why she disregarded two of the three DOT jobs cited by the VE as suitable to Plaintiff's limitations. The VE opined that a person with Plaintiff's RFC could perform work as a product inspector (DOT 529.687-186), packer (DOT 920.685-026), or cashier (DOT 211.462-010). Tr. 49-50. However, ALJ relied on only the latter in her decision. Plaintiff thus asserts that the ALJ failed to resolve a conflict between the VE's testimony and the DOT listings, as required by SSR 00-4p.

The Commissioner concedes that the VE's testimony conflicts with DOT information with respect to the jobs of product inspector and packer.[3] However, the Commissioner submits that the ALJ committed no error because she did not rely on those

---

[3]   The DOT listing for job 529.687-186 is titled "sorter, agricultural produce" and describes work involving the sorting and packing of produce. *See* Dictionary of Occupational Titles, Processing Occupations, https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT05D, last visited February 5, 2021.
The DOT listing for job 920.685-026 is "bottle packer" and involves tending a machine that inserts beer bottles into cardboard cartons. *See* Dictionary of Occupational Titles, Miscellaneous Occupations,
Thttps://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT09A, last visited February 5, 2021.

listings but rather only on the third listing (cashier), where the VE's testimony and the DOT were consistent. Eighth Circuit precedent supports the Commissioner's position that the ALJ did not err in relying on the VE's testimony as long as at least one cited listing satisfies the RFC. *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (reasoning that one mistaken recommendation does not devalue the remainder of the VE's opinion); *Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999) (holding that one appropriate listing constituted substantial evidence). *See also, Flynn v. Berryhill*, 4:16 CV 1927 CDP, 2018 WL 1410233, at *6 (E.D. Mo. Mar. 21, 2018) ("In order to meet his burden at Step 5 of the sequential analysis, the ALJ need only identify one occupation that exists in significant numbers that a claimant can perform with his RFC." (citing *Weiler*, 179 F.3d at 1110)). Plaintiff offers no authority to the contrary.

During the VE's testimony, the ALJ specifically inquired about limitations not addressed in the DOT (i.e., left leg controls and overhead reaching), and the VE responded based on his extensive experience. The Court cannot say that the ALJ erred in relying on the VE's testimony or that the record lacks sufficient evidence to support the ALJ's ultimate finding that employment within Plaintiff's limitations exists in the national economy.

## CONCLUSION

The ALJ's RFC description was sufficiently specific without a function-by-function recitation of activities on which the ALJ found no limitations. The Court is confident that the VE understood the RFC hypotheticals posed to him. Though two of the job listings cited by the VE were inconsistent with the DOT, the ALJ avoided any

15

error by relying only on the job listing for which the VE's testimony and the DOT were consistent, which is sufficient according to Circuit precedent.

Overall, the ALJ's decision reflects that she considered Plaintiff's symptoms and complaints but concluded that the limiting effects he alleged were not supported by the medical evidence on the whole record. This is a proper exercise of the ALJ's discretion. While the Court must take into account "evidence that both supports and detracts from the ALJ's decision, … as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). When it is possible to draw different conclusions from the evidence and one represents the Commissioner's findings, this Court must affirm the decision. *Chaney*, 812 F.3d at 676. Here, the Commissioner's findings are supported by substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February 2021.